## DELTON L. RICE v. NEW YORK LIFE INSURANCE COMPANY.[1]

March 15, 1940.

No. 32,293.

[1] Reported in 290 N. W. 798.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for appellant.
*Hougen & Holten* and *T. H. Wangensteen,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover disability benefits under two life insurance policies, both of which were issued upon plaintiff's application dated December 18, 1925. The disability which plaintiff claims entitles him to the benefits was caused by tuberculosis.

The defense is false statements in the application. Plaintiff answered all the questions truthfully except those relating to medical consultation and treatment to be presently mentioned. He stated that his mother, father, and an adult brother died of tuberculosis, that another brother died of typhoid fever, and two sisters died of diphtheria. He gave false answers to the questions whether he had had any injury, whether sugar had been found in his urine, and whether he had consulted or been examined by a physician within five years last past before the date of the application.

Defendant claims that it established as a matter of law that the misrepresentations were material by three items of evidence, *viz.:* the evidence of Dr. Ivar Sivertsen based on a record of the Sivert-

sen Clinic, a record of plaintiff's case at the Glen Lake Sanatorium, and a written statement given by plaintiff to one Lappin, an agent of defendant.

The record of the Sivertsen Clinic was made by Dr. Andrew Sivertsen, who treated plaintiff during 1925 prior to the application for the insurance. Dr. Andrew Sivertsen did not testify, and the record was not introduced in evidence. Dr. Ivar Sivertsen, who had no personal knowledge of the matters appearing in the record, was permitted to state what the record showed and to give an opinion on the facts so stated by him.

His testimony in effect was that the record showed that plaintiff was treated at the clinic from January 22, 1925, to December 16, 1925; that the history given showed that plaintiff had diabetes in 1915; and that plaintiff came to the clinic because of a diabetic condition and heart trouble. The record showed that plaintiff was treated for a knee condition by diathermy.

Plaintiff was then some 50 or 60 pounds overweight, which the doctor said was a bad condition. Between January 22 and February 18 there were five urinalyses, all of which showed no sugar in the urine. Plaintiff was then advised that he could eat certain foods which are productive of sugar in the urine in certain cases. The next analysis, which was on May 7, 1925, showed 4-plus sugar content in the urine, which the doctor said was the highest amount the medical profession expects to find. Then he said blood sugar tests should have been taken to determine if plaintiff had diabetes, but that no such tests were taken. On July 15 the same amount of sugar in the urine was found and on July 22 only 2-plus. Then a change of diet was prescribed. On November 4 his urine was found to be free from sugar. That was about six weeks before the application was made for the insurance.

Dr. Sivertsen's opinion was that plaintiff during the time covered by the record was a potential diabetic. He said that plaintiff was suffering from diabetes mellitus or deficiency of insulin. He did not say that plaintiff had diabetes. He did not refer to

the heart condition at all or show that any treatments were given for it.

The clinic record was admittedly incomplete in many respects. No mention was made of the diathermy treatments from May to November, most of which were given at Dr. Andrew Sivertsen's downtown office. It failed to show, as is customary in such cases, who referred the case to the clinic, the previous treatment for the alleged ailment, the plaintiff's family history with its deaths of parents and a brother from tuberculosis, and many other details.

There was no evidence of any kind, by the clinical record or otherwise, that plaintiff was ever informed that sugar had been found in his urine. He denied positively that he ever had such knowledge. Plaintiff and his family doctor, Dr. Lysne, testified that he was referred to the Sivertsen Clinic by Dr. Lysne solely on account of an injured knee for the reason that the injury required treatment by diathermy, for which Dr. Lysne did not have the necessary equipment. Furthermore, plaintiff testified that he did not have diabetes ten years prior to January, 1925, and that he made no statement to Dr. Sivertsen that he had had it. His testimony is that he first had diabetes sometime in the period from 1926 or 1927 and was treated for it by Dr. Lysne. So far as he knew, the urinalyses were in connection with the treatment for the injured knee.

The insurance company's examining physician testified that he examined plaintiff on December 18, 1925, and found no evidence of diabetes, although the examination was to ascertain the existence of the same as well as other diseases.

There was medical testimony that the presence of sugar in the urine disclosed by the Sivertsen report was not a certain indication of diabetes; that the presence of sugar in the urine may be transitory and temporary; that only a blood test would have shown whether or not plaintiff was a diabetic; and that absent such tests it was impossible to say that he was diabetic.

The second item of evidence is a case report in the files of the Glen Lake Sanatorium. The report relates to plaintiff's case when

he was admitted to the sanatorium on September 28, 1936. A student doctor or intern, whose identity was not disclosed and who did not appear as a witness, wrote the report. Contrary to the rules of the institution, he did not sign it. The report contained a statement that plaintiff had diabetes in 1911. Plaintiff flatly denied that he ever made any such statement to the doctor or intern or that he had diabetes in 1911.

The third item relied on is a statement by plaintiff to one Lappin at the Glen Lake Sanatorium on November 12, 1936, while the plaintiff was a patient there, to the effect that plaintiff had had diabetes for 14 years prior to that date, or since 1922. Plaintiff admitted signing the statement, but explained that he did not read it. He claims that he told Mr. Lappin that he had diabetes since about 1926 or 1927 and that he had taken treatments since that time from Dr. Lysne. The statement refers to the treatments by Dr. Lysne.

There was no claim or showing of connection between the alleged diabetes mellitus and the tuberculosis, which caused the disability.

Defendant contends that it appears as a matter of law that plaintiff made false representations in the application which entitle it to void the policy. Certain other points are raised relative to rulings on evidence. Other points are discussed which we think were not properly raised here or below.

1. The materiality of misrepresentations in an application for life insurance are governed by 1 Mason Minn. St. 1927, § 3370, which provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

In Schaedler v. New York L. Ins. Co. 201 Minn. 327, 336, 276 N. W. 235, 241, reviewing our decisions construing the statute we held:

"A material misrepresentation made with intent to deceive or defraud avoids the policy. A material misrepresentation not made with intent to deceive or defraud does not avoid the policy unless by the misrepresentation the risk of loss is increased. If a material misrepresentation increases the risk of loss it avoids the policy regardless of intent. An immaterial representation, though made with intent to defraud, does not avoid the policy. Whether a misrepresentation is material, and whether it increases the risk of loss, and whether it is made with intent to deceive are usually questions of fact for the jury, with the burden of proof upon the insurer."

We there also held that risk of loss is not increased by failure of the insured to disclose medical consultations or treatment for trivial, temporary ailments deemed cured.

Before passing to a consideration of the weight of the evidence, we point out that the question of the admissibility of the evidence is not before us. There may be serious doubt as to the admissibility of recitals of previous facts in such records. The basis on which such reports are admitted is that they are a contemporary record of the treatment or transactions at the hospital or clinic. In In re Estate of Lust, 186 Minn. 405, 243 N. W. 443, we held that a statement in a hospital record that a party was a single man was not admissible. The only question before us is the weight of the evidence which is in the record.

The medical testimony alone did not require a finding of diabetes. Whether the presence of the sugar in the urine found by Dr. Sivertsen showed a physical condition materially affecting the risk or was transitory, indicating a temporary condition, was for the jury. This phase of the case is governed by our decision in Ames v. New York L. Ins. Co. 154 Minn. 111, 191 N. W. 274, 275, which is almost identical with the instant case. There, as here, the insurer showed that the insured failed to disclose consultations and medical treatments for diabetes mellitus; that he was overweight; and that sugar was found in his urine. In that case there was testimony, absent here, that the insured had been

advised that he had diabetes. Subsequent examinations showed no sugar in the urine. In holding that the concealment of the consultation and treatment did not void the policy as a matter of law, we said [154 Minn. 114]:

"Appellant contends that there can be but one answer to the question whether the hazard it assumed was materially affected by the failure to disclose the consultations with Dr. Nauth. The force of the contention is weakened by the doctor's testimony that there may be a transitory sugar in the urine; that on his second examination of the applicant he found no sugar; that its presence is not a certain indication of diabetes, and by proof that, after its examining physician had made his report, specimens of urine were called for by appellant and sent to its home office more than once before the application was accepted. Under all the circumstances, we are of the opinion that the question was one for the jury and that the evidence would justify a negative answer."

If plaintiff did not know that sugar was discovered by Dr. Sivertsen in his urine he could not have fraudulently misrepresented such fact. There could be no misrepresentation with intent to defraud unless plaintiff knew of the existence of the facts which it is claimed he misrepresented. Domico v. Metropolitan L. Ins. Co. 191 Minn. 215, 253 N. W. 538.

The weight of the other evidence to show that plaintiff had diabetes was for the jury. In the last analysis, the correctness of the statements in the Sivertsen Clinic record, Glen Lake Sanatorium records, and the Lappin statement depended on whether plaintiff told Dr. Andrew Sivertsen, the unidentified doctor or intern at the sanatorium, and Mr. Lappin that he had diabetes. The facts that the doctor or intern was not produced as a witness and that the Sivertsen Clinic record was not introduced in evidence were in themselves significant. Domico v. Metropolitan L. Ins. Co. 191 Minn. 215, 253 N. W. 538. Whether the statement given to Mr. Lappin correctly embodied the oral statement of plaintiff depends on whose version of the transaction the jury

believed and presented only a fact question. Marino v. N. P. Ry. Co. 199 Minn. 369, 272 N. W. 267.

There is so much omission, contradiction, and failure to show matters requiring explanation, in the evidence, that we are not justified in saying that it proves defendant's contentions as a matter of law. The clinic records are incomplete and omit matters which should affirmatively appear. The deficiencies are not accounted for. The failure to introduce the clinic record in evidence has already been commented on. It was not shown that the identity of the doctor or intern at Glen Lake could not be ascertained and that he could not be produced as a witness. The defendant's failure to call him or explain its failure to do so permitted an inference that if he had been called his testimony would have been unfavorable to defendant. State v. Jansen, 207 Minn. 250, 256, 290 N. W. 557.

While the failure to produce Dr. Andrew Sivertsen was explained, the fact remains that the records made by him and the Glen Lake Sanatorium doctor or intern are but their unsworn statements, even if they are in writing. There was no way of judicially testing their probative worth by examination and cross-examination as there was the oral testimony of plaintiff. There was less reason to adopt the statement in the Glen Lake Sanatorium report. The trier of fact is not bound to accept the unsworn written statement of some anonymous character as against the sworn testimony of a witness whom it has seen and heard.

The statements giving three different dates, all prior to the application for the insurance when plaintiff was supposed to have said he had diabetes, the Glen Lake record, 1911, the Sivertsen Clinic record, 1914 or 1915, and the Lappin statement, 1922, contained too much of contradiction and inconsistency. If plaintiff in fact had had diabetes, it is reasonable to believe that he would have said that he had it at about a certain time. Although he might have given the different dates varying as much as 11 years, it is not at all probable that he would have done so.

2. The contention is made that expert opinions by Dr. Lysne and Dr. Hutchinson were not admissible to show that the evi-

dence did not show for certain that plaintiff was a diabetic prior to the time he applied for the insurance, that the finding of sugar in the urine might be explainable as only a temporary or transitory presence of the sugar, and that only a blood sugar test at the time would have shown for certain whether or not plaintiff was then a diabetic. The opinions were in answer to hypothetical questions embodying all the facts shown by defendant's evidence. The opinions were admissible under the rule that a physician as an expert may testify as to a person's physical condition where the hypothetical question eliciting his opinion is based on all the facts admitted or established, or which, if controverted, might reasonably be found from the evidence. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 3337, 3338; Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015; Willard v. St. Paul City Ry. Co. 116 Minn. 183, 133 N. W. 465.

3. The final claim of error which we think merits discussion relates to the admission of a report of plaintiff's case prepared by Dr. Hutchinson after the first and before this, the second, trial. The report was made a part of the record at the Glen Lake Sanatorium. It did not contain a statement that plaintiff had diabetes since 1911. It stated that he had diabetes since 1927, when it was first discovered and treated by Dr. Lysne. She made the official admission examination of plaintiff at the sanatorium on October 2, 1936. A report in pencil was written by her at the time. It was superseded by the one in question, which was typewritten. The latter was based on the previous one. Dr. Hutchinson was examined in great detail as to the contents of both reports. The examination and cross-examination brought out orally everything that was in the report in question. The report showed nothing that had not already been covered by the testimony. It is not error to receive a writing in evidence the contents of which have been shown by testimony previously given. Grimes v. M. St. P. R. & D. Elec. Traction Co. 133 Minn. 442, 158 N. W. 719, L. R. A. 1916F, 687; Coyne v. Bearman Fruit

Co. 176 Minn. 480, 224 N. W. 146. The writing adds nothing to the testimony already received in such cases. The matter is one almost entirely in the discretion of the trial court. No prejudice could have resulted.

There have been two trials of this action with a verdict in favor of plaintiff in both of them. The evidence sustains the verdict, and there should be an affirmance.

Affirmed.